UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as
Receiver for NETBANK, FSB,

    Plaintiff,

v.                                            Case No. 07-14045

HOME CONNECTION MORTGAGE, INC.,
et al.,                                    HONORABLE AVERN COHN

    Defendants.

_____/

## MEMORANDUM AND ORDER
## DENYING DEFENDANT COLONIAL TITLE'S MOTION TO DISMISS

I. Introduction

This is a mortgage fraud case involving multiple defendants. All proceedings have been stayed pending mediation with the exception of defendant Colonial Title Company (Colonial Title) being permitted to file a motion to dismiss. While the FDIC has voluntarily provided thousands of pages of documents to all defendants, the FDIC has not obtained discovery from Colonial Title.

Before the Court is Colonial Title's motion to dismiss.[1] For the reasons that follow, the motion is DENIED.

---

[1] Colonial Title also moved for summary judgment. At a hearing on the motion, however, Colonial Title withdrew its request for summary judgment.

## II. Background

On September 25. 2007, NetBank filed its complaint against numerous defendants. The complaint details an extensive real estate flipping scheme to defraud NetBank which involved the participation of several players. The defendants are generally categorized as brokers, appraisers, title companies/settlement officers, and others (sellers, and borrowers).

NetBank subsequently went into receivership and the FDIC, as receiver, filed an amended complaint on April 17, 2008 (Amended Complaint). The Amended Complaint is fifty-five (55) pages long, contains fourteen (14) counts and two hundred fifty-two (252) numbered allegations. Colonial Title is named in four counts of the Amended Complaint, as follows:

> Count III - Negligence
>
> Count IV - Breach of Closing Letter Contract
>
> Count XII - Fraud - HUD-1 Information
>
> Count XIII - Civil Conspiracy

After most of the defendants were served, on June 24, 2008, the Court held a status conference to chart the course of the case. On June 26, 2006, the Court entered an Order Staying Action Pending Settlement Conference and Appointing a Mediator. The order stayed proceedings pending mediation before William Sankbeil. However, Colonial Title was permitted to file a motion to dismiss. Also on June 26, the Court entered an order establishing protocols for the settlement conference.

Colonial Title then filed the instant motion.

III. Legal Standards

In facing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional Rule 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S.Ct. at 1964-65 (citations omitted); Association of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp., 127 S.Ct. at 1965 (citations omitted).

As noted above, the FDIC has set forth a fraud claim against Colonial Title which implicates the requirements under Fed. R. Civ. P. 9(b). Rule 9(b) provides that,

> [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

3

Fed. R. Civ. P. 9(b). When analyzing the question of whether a party has complied with the Rule 9(b) requirement to plead fraud with particularity, the Court must also consider the "short and plain statement of the claim" requirement of Rule 8(a)(2). Fed. R. Civ. P. 8(a)(2); Sanderson v. CA-The Healthcare Co., 447 F.3d 873, 876 (6th Cir. 2006). "'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.'" Sanderson, 447 F.3d at 876 (quoting Michaels Bldg. Co. v. Ameritrust Co., 848 F.2d 674, 679 (6th Cir.1988)). "The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 322 (6th Cir. 1999) (citing Michaels Bldg. Co., 848 F.2d at 679). In order to comply with Rule 9(b), a pleading must, at a minimum, include allegations as to "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993)). A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b)(6). Michigan ex rel. Kelley v. McDonald Dairy Co., 905 F. Supp. 447, 450 (W.D. Mich. 1995).

IV. Analysis

A. Parties' Arguments

Essentially, Colonial Title says it is entitled to dismissal because any fault on its part was the result of inadequate instructions from NetBank and/or NetBank was in the best position to prevent any fraud. Colonial Title says it acted in accordance with

4

NetBank's instructions and within the authority given it by NetBank.  Colonial Title says the blame, if any, lies with NetBank, not with Colonial Title for either approving bad loans and/or having poor procedures in place to guard against bad loans.  In legal terms, Colonial Title says it owed no duty to Netbank nor were any of its actions the proximate cause of NetBank's injuries.  Colonial Title also suggests that it should not be liable as a matter of policy, in that it simply followed instructions from NetBank.

The FDIC says that dismissal is not warranted because it has sufficiently plead its claims against Colonial Title.  The FDIC says that the allegations in the Amended Complaint make a strong case against Colonial Title regarding its actions with respect to the 12 identified bad loans.

### B.  Role of Title Company

### 1.

Before examining Colonial Title's motion, a brief recitation of the role a title company plays in a real estate transaction is in order.  A title company is an agent for the lender, borrower and underwriter.  Its receives written closing instructions which dictates how the closing should be performed.  If the title company cannot comply with the instructions, the closing should be stopped.  In addition to closing instructions from the lender, a title company must also follow written instructions from title insurance underwriters.  At closing, the title company notarizes certain documents, including the HUD - 1 Settlement Statement (HUD - 1) which generally outlines the financial details of the closing, including an itemization of all charges imposed on the borrower ad seller in the transaction and a complete list of incoming and outgoing funds.

2.

In the Amended Complaint, the FDIC says that Colonial Title, and other title companies, performed real estate transactions and closings involving essentially "bad" loans which caused liability to NetBank. The Amended Complaint identifies several types of inaccuracies or other errors alleged to have been performed by the title companies. These include:

- Inaccurate Cash at Closing (ICAC) - title company inaccurately stating on line 303 of the HUD - 1 the amount of cash paid by the buyer at closing

- Failure to Inform Lender of Immediate Prior Sale (FLIP) - failing to inform the bank that the seller acquired the property less than one year prior to the closing for an amount substantially lower than price being paid by buyer

- Excessive Real Estate Commission (ERC) - broker receiving a commission in excess of the amount reported on HUD - 1

- Disguised Purchase (DP) - title company omitting all information about the seller on the HUD - 1 and identifying buyer as the existing title holder on the title commitment so that the transaction appears to be a refinancing

- Seller Not in Title (SNIT) - title company incorrectly stating on the title commitment that the seller is the current title owner

- Disguised Disbursement (DD) - title company incorrectly identifying a disbursement on the HUD - 1 so as to disguise an unauthorized payment to a person or entity

- Unauthorized Disbursement (UD) - title company disbursing payment to a person or entity not authorized by the bank

- Failure to Disclose Payment (FDP) - title company failing to disclose on the HUD - 1 disbursements made at closing

The FDIC alleges that Colonial Title was involved in 12 loans which each involved some of these types of practices.

Each of the FDIC's claims against Colonial Title are addressed in turn.

### C. Count III - Negligence

The elements of a negligence claim are "duty, breach of that duty, causation, and damages." Brown v. Brown, 478 Mich. 545, 552 (2007). The FDIC has plead all of these elements as to Colonial Title. The FDIC alleges that Colonial Title had a duty to NetBank to fulfill its obligations as a settlement/closing agent and escrow agent which included, inter alia, disclosing material information, closing accordance with the relevant closing instructions, using due care in preparing the HUD - 1. The FDIC further alleges Colonial Title breached its duty through making several errors and omissions which caused damage to NetBank.

Colonial Title's arguments really speak not to whether the FDIC has stated a negligence claim, but rather whether Colonial Title can be held liable in negligence for its role in the various loan transactions. Although Colonial Title spends a good deal of time arguing over the scope of its duty to NetBank, it is clear that some level of duty was owed inasmuch as Colonial Title acted in a fiduciary capacity during the closings. Colonial Title's arguments go to summary judgment, not dismissal. Colonial Title seeks to avoid liability in arguing that NetBank was responsible, or should have been more responsible, for the bad loans which occurred. Although Colonial Title says it complied with all of NetBank's closing instructions and HUD - 1 requirements, NetBank says otherwise.

Moreover, as set forth in detail in the FDIC's brief, one of the loans for which Colonial Title was the title agent - identified as the "Johnson Loan" in the Complaint Loan Chart A and described in paragraph 74, chart line 29 - shows otherwise. NetBank's closing instructions stated that the borrower must contribute at least $500.00

of their own funds at closing and the maximum seller contribution toward buyer closing costs allowed on the HUD -1 is $2,400.00. For the Johnson Loan, Colonial Title included a check from the seller in the amount of $5,543.43 payable to Colonial Title for the cash from borrower. This amount seems to exceed the amount in the instructions and shows no funds were contributed by the borrower. The FDIC says that it would not have made the loan had it known the true state of events at the closing. Colonial Title says Netbank was an unscrupulous lender that would have made the loan regardless. At the very least, the FDIC has plead a negligence claim.

### D. Count IV - Breach of Closing Letter Contract

Under Michigan law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury. Webster v. Edward D. Jones & Co., L.P., 197 F.3d 815, 819 (6th Cir. 1999).

The FDIC has plead all of these elements against Colonial Title. The FDIC identifies the contract as "the Closing Letter." It further alleges that the contract was breached by Colonial Title's actions at the closing which included creating inaccurate information on the HUD - 1. The FDIC alleges that Colonial Title's actions caused damage to NetBank. Thus, Count IV states a claim for breach of contract against Colonial Title.

### E. Count XII - Fraud - HUD - 1 Information

Under Michigan law, "[t]he elements of fraud are: (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she

8

knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury." Novi v. Robert Adell Children's Funded Trust, 473 Mich. 242, 253 n 8 (2005). "[W]here a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements for the damages resulting from the fraud." Oppenhuizen v. Wennersten, 2 Mich. App 288, 294 (1966) (citation and quotations omitted). Privity of contract is not required for recovery under this scenario. Id.

The FDIC has plead all of the elements against Colonial Title and with the requisite particularity. The FDIC says that material misrepresentations were made on the HUD - 1 with respect to the loans at issue which were false, that Colonial Title knew or should have known they were false, and that NetBank relied on the misrepresentations to its detriment.

Specifically, material misrepresentation is alleged in paragraphs 74 and 221-237, knowledge and/or recklessness is alleged in paragraphs 229-232, intent is alleged in paragraphs 233-235, reliance is alleged in paragraph 236, and injury is alleged in paragraph 237.

F. Count XIII - Civil Conspiracy

Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to

9

accomplish a lawful purpose by criminal or unlawful means." <u>Admiral Ins. Co. v. Columbia Cas. Ins. Co.</u>, 194 Mich. App. 300, 313 (1992). A plaintiff must also allege a separate actionable tort. See <u>Advocacy Org. For Patients & Providers v. Auto Club Ins. Ass'n</u>, 257 Mich. App. 365, 385 (2003).

The FDIC has plead all of the elements of this claim. It has alleged a concerted action and combination of people which include Colonial Title and that the action had an unlawful or criminal purpose by using false information to induce NetBank into lending funds in violation of state and federal law. Moreover, as noted above, the FDIC has also properly plead the separate tort of negligence.

SO ORDERED.

    s/Avern Cohn  
AVERN COHN  
UNITED STATES DISTRICT JUDGE

Dated: September 18, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 18, 2008, by electronic and/or ordinary mail.

    s/Julie Owens  
Case Manager, (313) 234-5160